[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-11397
Non-Argument Calendar

_____

D. C. Docket No. 05-03302-CV-CC-1

JOHN K. WILLIAMS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 10, 2009)**

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

John Williams, a federal prisoner proceeding <u>pro se</u>, filed this action

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. Williams alleged that certain federal agents negligently or intentionally injured him in conducting his arrest, and negligently denied him medical care after he was injured. The district court granted summary judgment for the United States. Williams filed timely notice of appeal.

## BACKGROUND

The parties dispute nearly every fact associated with the arrest. The facts, either undisputed or as supported by the evidence construed in the light most favorable to Williams, are as follows:

In early 2003, pursuant to a valid arrest warrant for drug trafficking issued by the United States District Court for the District of South Carolina, federal agents were seeking to apprehend Williams. On February 4, 2003, in the course of surveillance of an office building in College Park, Georgia, FBI Special Agent Ronald Campbell observed Williams enter a nearby building, then leave moments later and enter a SUV from the passenger side. Agent Campbell radioed for other agents to stop the SUV before it entered the roadway. Several unmarked FBI vehicles moved to block the SUV's forward path and armed federal agents emerged from the vehicles; the vehicles' blue lights were not activated and flashing and the agents did not identify themselves as law enforcement agents. Agent

-2-

Campbell began to maneuver his vehicle, which was also unmarked, behind the SUV from the left rear in a vehicle-blocking motion. While Campbell was positioning his vehicle, Williams emerged from the passenger side of the SUV. Recalling that Williams previously had fled the police, Agent Campbell quickly moved his vehicle towards the curb "several feet" to block any escape path between the SUV and a row of bushes close to the SUV's right side. As Williams fled on foot, he was struck by Agent Campbell's vehicle, slid off the hood and struck the pavement. Agents handcuffed Williams while he was lying on the ground exhibiting signs of pain. The maneuvers employed by Agent Campbell and the other agents to prevent Williams' escape were consistent with FBI training regarding a non-compliant, stationary car stop.

Williams asserts that as he was being transferred to the United States Marshals for processing, he informed Internal Revenue Service (IRS) Special Agent Wayne Wright and FBI Special Agent Jeffrey Alford that his back was hurting. Agent Wright advised Williams that if he felt he needed medical care, he should inform the Deputy United States Marshals having custody over him. The United States Marshals' Medical In-Processing Questionnaire, which Agent Alford filled out upon arriving at lock-up and which Williams signed, specifically notes Williams' history of chest pain, shortness of breath, heart trouble, high blood

pressure, joint pain in his left toe, and "chronic deadly constipation," but does not indicate that Williams was experiencing any back pain. Three days later, after his transfer to South Carolina, Williams complained of back pain, submitted a request for a medical evaluation, and promptly received medical attention. Seven months later, in September 2003, Williams was diagnosed with a disc herniation.

Based on these facts, the district court found that summary judgment for the United States was appropriate on all of Williams' claims. It explained that because the evidence, construed in the light most favorable to Williams, showed that Williams "was running toward Agent Campbell's vehicle with his head turned in the other direction upon impact, [] any action against Defendant based on Agent Campbell's negligent operation of his vehicle is barred by Plaintiff's own negligence." Further, to the extent Williams asserted a claim for intentional battery, the district court noted that because the federal agents had probable cause to arrest Williams, Agent Campbell was entitled under Georgia law to use a reasonable amount of force to effectuate that arrest. The district court then found that Williams "offered no evidence to support his claim that Agent Campbell used unreasonable force during his arrest." Finally, regarding Williams' claim for failure to provide medical attention for his alleged back injury, the district court found that the agents were under no duty to provide medical care because the

evidence did not support Williams's claim that the agents were aware that he required medical attention. Furthermore, there was no evidence that Williams' condition worsened during his two days in federal custody, especially in light of the fact that seven months passed before Williams' condition was diagnosed. Williams appeals.

## STANDARD OF REVIEW

We review <u>de novo</u> a district court's ruling on summary judgment, applying the same legal standards as the district court. <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate only when the evidence before the court demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the district court's grant of summary judgment, we consider Williams' verified amended complaint, and the affidavits and other documentary evidence submitted by the parties, and view that evidence in the light most favorable to Williams, the non-moving party. <u>See</u> <u>Augusta Iron and Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988).

Additionally, as a federal court of limited jurisdiction, we are "'obligated to inquire into subject-matter jurisdiction <u>sua sponte</u> whenever it may be lacking.'" <u>Chacon-Botero v. U.S. Att'y Gen.</u>, 427 F.3d 954, 956 (11th Cir. 2005) (quoting

Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (internal quotation marks omitted)).  In deciding whether subject matter jurisdiction exists, we may consider the pleadings and matters outside the pleadings, such as testimony and affidavits, in order to satisfy ourselves as to our power to hear the case.  McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ANALYSIS

### A.    Agent Campbell's Use of the Vehicle: Negligence

For the reasons stated below, we conclude that Williams' claim that Agent Campbell acted negligently in the course of the arrest is not actionable under the FTCA and that, therefore, the district court lacked jurisdiction to consider this claim.  See Bennett v. United States, 102 F.3d 486, 488 n.1 (11th Cir. 1996) ("Unless the United States may be held liable pursuant to the terms of the statute, the sovereign's immunity remains intact, and no subject matter jurisdiction exists.") (citation omitted).  Accordingly, we dismiss this claim for lack of subject matter jurisdiction without reaching the merits of Williams' arguments on appeal.[1]

---

[1]On appeal, Williams contests the district court's finding that he had conceded that he was running with his head turned in the other direction at the time he was struck by Agent Campbell's vehicle.  He argues the district court impermissibly weighed the evidence and discredited his sworn statement in finding that he negligently contributed to his injury.  Williams also argues that a plaintiff's negligence is not a total bar to recovery under Georgia comparative negligence law.  Accordingly, Williams argues that the district court erred in finding that he had been contributorily negligent and in granting summary judgment on this ground.

It is a well-settled axiom that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The FTCA waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of governmental employees while acting in the scope of their employment. 28 U.S.C. § 1346(b)(1). In these circumstances, the United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Congress, however, has adopted a number of exceptions to the FTCA's waiver of sovereign immunity and if the alleged conduct falls within one of the excluded categories, the court lacks subject matter jurisdiction over the action. JBP Acquisitions, LP v. United States, 224 F.3d 1260, 1263-64 (11th Cir. 2000). In particular, if the complaint challenges the employee's performance of a discretionary function, 28 U.S.C. § 2680(a) exempts the United States from liability. The discretionary function exception applies regardless of whether the agency or employee exercised due care. Buchanan v. United States, 915 F.2d 969, 971 (5th Cir. 1990). Thus, to recover damages for negligence under the FTCA, the evidence must establish that Agent Campbell was not exercising a discretionary function in his performance of the arrest.

In general, because it is the mandatory duty of law enforcement agents to

enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception. See Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201 (11th Cir. 2000) (holding that U.S. Customs Service's decision to board and search a particular vessel met both prongs of the discretionary function test); Mesa v. United States, 123 F.3d 1435 (11th Cir. 1997) (holding that the manner in which agents executed an arrest warrant was covered by the discretionary function exception); United States v. Faneca, 332 F.2d 872, 875 (5th Cir. 1964)[2] (holding that the "discretionary function" exception applied to federal agents' allegedly negligent firing into a riot because "[j]ust as the tasks of carrying out the orders of this Court and of handling an unruly mob are among the responsibilities of [federal agents], so is the choice of means for performing these tasks peculiarly within their discretion"). Even so, the courts should not accept this general rule without analyzing the specific facts of each case.

The Eleventh Circuit employs a two-part test in deciding whether the discretionary function exception applies. First, we must determine whether the act "involv[es] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991); Hughes v. United States, 110 F.3d 765, 767 (11th Cir. 1997).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" there is no judgment or choice involved. Gaubert, 499 U.S. at 322; see also Phillips v. United States, 956 F.2d 1071, 1076 (11th Cir. 1992) ("Where there exists a mandatory responsibility, there is no room for a policy choice."). The inquiry focuses on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." Hughes, 110 F.3d at 768; see also Autery v. United States, 992 F.2d 1523, 1529 (11th Cir. 1993) (explaining that a decision is subject to the exception unless "a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard"). In this case, it is undisputed that Agent Campbell decided to pull his vehicle forward in order to prevent Williams' escape and to effect the arrest. No fixed standard or statute exists to mandate precisely how to prevent escape of a fleeing suspect or how to carry out an arrest; further judgment under such circumstances is required. Thus, the first prong is met here.

If the conduct does "involv[e] an element of judgment or choice," the second prong of the two-part test requires us to then look at "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23 (quoting United States v. Varig Airlines, 467 U.S.

797, 813 (1984)). The discretionary function exception is intended "to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Id. (quoting Varig Airlines, 467 U.S. at 814). Thus, "when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." Id. at 323. This exception may include day-to-day management, id. at 325; Hughes, 110 F.3d at 768, so long as "the decision is one we would expect inherently to be grounded in considerations of policy." Autery, 992 F.2d at 1530-31. "If the decision is inherently one allowing discretion, we presume that the act was grounded in policy whenever that discretion is employed." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

Here, Agent Campbell's decision to pull his vehicle forward to prevent Williams' escape was discretionary and susceptible to policy analysis. He was required to consider his training, the need to restrain Williams, the concern for Williams's safety, the public's safety, his available resources, and the information at hand in determining the proper course of action. All of these factors indicate that the decision regarding how to best effectuate an arrest warrant is "fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate." Mesa, 123 F.3d at 1438. Accordingly, the

second prong of the discretionary function test is met in this case.

We conclude that the discretionary function exception to the waiver of sovereign immunity applies, and the United States may not be sued based on the allegedly negligent conduct of Agent Campbell during the course of the arrest. Because the United States has not waived its sovereign immunity, the district court lacked jurisdiction to consider this claim and we therefore dismiss it.

**B. Agent Campbell's Use of the Vehicle: Battery**

Williams argues that the district court erred in finding that he had offered "no evidence to support his claim that Agent Campbell used unreasonable force during his arrest." Specifically, Williams asserts that the medical evidence supports his assertion that Agent Campbell drove his vehicle at an excessive speed such that the use of force was unreasonable. Accordingly, Williams argues that summary judgment was inappropriate on this claim.

In addition to waiving immunity for the non-discretionary negligent conduct of its employees, the United States, through Section 2680(h) of the FTCA, waives sovereign immunity for claims arising out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, or malicious prosecution" of an investigative or law enforcement officer of the United States. 28 U.S.C. § 2680(h). This provision waives sovereign immunity for battery claims against

federal law enforcement officials, including battery claims arising out of those acts or omissions that fulfill a discretionary function. Nguyen v. United States, – F.3d –, No. 07-12874, slip op. at 35 (11th Cir. Feb. 4, 2009) (explaining that where "the § 2680(h) proviso applies to waive sovereign immunity, the [discretionary function] exception to waiver contained in § 2680(a) is of no effect"). For purposes of the exemption statute, a law enforcement officer is any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law. 28 U.S.C. § 2680(h). It is undisputed that Agent Campbell is empowered by law to make arrests; therefore, he is a "law enforcement officer" under the FTCA. As such, the United States may be liable for Agent Campbell's battery of Williams, but only to the extent "a private person would be liable to [Williams] in accordance with the law of [Georgia]." 28 U.S.C. § 1346(b)(1); see also United States v. Olson, 546 U.S. 43, 44-47 (2005) (holding that United States' liability under the FTCA is to be based on the state law liability of a private party, not of a state or municipal entity).

As the district court properly found, Georgia law has codified the common law claim of battery to provide that any "physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury, *unless he is justified under some rule of law*." O.C.G.A. § 51-1-

13 (emphasis added). One such legal justification is the rule that a private person performing a lawful citizen's arrest has the right to use that force reasonably necessary to restrain the arrested individual. Patel v. State, 620 S.E.2d 343, 346 (Ga. 2005); Smith v. Holeman, 441 S.E.2d 487, 491 (Ga. Ct. App. 1994). A citizen's arrest is authorized upon reasonable and probable grounds of suspicion if the offense is a felony and the offender is escaping or attempting to escape. O.C.G.A. § 17-4-60. A private citizen has as much a right to use "reasonable force" to arrest a fugitive felon as does a police officer and, while so doing, is equally under the protection of the law. Cobb v. Bailey, 133 S.E.2d 42 (Ga. Ct. App. 1926); Byrd v. Cavenaugh, 604 S.E.2d 655, 658 (Ga. Ct. App. 2004) (explaining that Georgia law authorizes an arresting officer to use no more force than is reasonably necessary under the circumstances to effect the arrest).

In this case, it is undisputed that the agents had a valid arrest warrant on drug trafficking charges and that Williams was attempting to escape; therefore, under Georgia law, Agent Campbell was justified in using that force reasonably necessary to effectuate the lawful arrest. Under the totality of the circumstances, the district court correctly found Williams's evidence insufficient as a matter of law to support his claim that Agent Campbell used unreasonable force. Considering the evidence in the light most favorable to Williams, Agent Campbell

moved his vehicle only several feet in order to block Williams's path as he fled. Even assuming Agent Campbell struck Williams in the process of moving his vehicle these several feet, he could not have done so at an unreasonable speed. Furthermore, as the district court properly found, Williams only offered his speculation regarding the speed of the vehicle. Unsupported speculation does not create a genuine issue of material fact. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). Finally, the medical record cited by Williams, which notes that his injury was "secondary to being struck by an automobile," does not support his claim that the use of force was unreasonable; this report was written six months after the arrest by a doctor who did not witness the incident. Because Williams has not presented evidence supporting his claim that the use of force was objectively unreasonable, we conclude that Agent Campbell's use of force in the legal arrest was justified and he is therefore not liable for battery under Georgia law. Accordingly, we affirm the district court's grant of summary judgment on this claim.

## C.    Negligent Failure to Provide Medical Care

Finally, Williams disputes the district court's finding that no evidence supported his claim that agents were aware of his injuries at the time of the arrest. He asserts that his sworn statements and the medical evidence supports his claim

14

that his injury was immediately apparent. As such, he argues that a genuine issue of material fact exists regarding his claim that the federal agents negligently failed to provide him with immediate medical care.

As has been discussed above, the FTCA authorizes private tort actions against the United States "under circumstances" where local law would make a "private person" liable in tort. 28 U.S.C. § 1346(b)(1). Accordingly, we must first consider whether the federal agents would have had a duty under Georgia law to provide medical care to Williams had they been private persons.

Under Georgia law, a person generally does not have a duty to assist other persons in danger; however, a person who undertakes a rescue generally has a duty not to increase the harm. Hamilton v. Cannon, 482 S.E.2d 370, 375 (Ga. 1997) (citing Restatement (Second) of Torts § 323, which states that one who undertakes to render services to another, which he should recognize as necessary for the protection of the other person, is subject to liability if he fails to exercise reasonable care and this failure increases the risk of harm). Thus, under this "Good Samaritan" doctrine, a rescuer voluntarily assumes a duty to avoid affirmative conduct that makes the condition of the helpless person worse. Id. Applying this doctrine, the Georgia Supreme Court has explained that a private citizen creates a special duty under the Good Samaritan doctrine when he exercises control over an

15

identifiable individual and voluntarily undertakes to assist that person.  Id.

Applying this rule to the case at bar, the facts viewed in the light most favorable to Williams establish a special relationship between Williams and the federal agents that sets Williams apart from the general public and engenders a special duty owed by the federal agents to him.  Specifically, once the federal agents exercised control over Williams, they had an affirmative duty to exercise reasonable care to secure his safety and not to worsen Williams' condition.

Here, there is no evidence other than Williams' own statements that the agents were aware of his alleged need for medical care.  Agents Wright and Alford admit that Williams informed them that his back was sore, but deny that he requested or appeared to require, medical attention.  According to Williams's own evidence, Agent Wright advised Williams as they were en route to lock up that he should inform the United States Marshals if he believed he needed medical attention.  It is further undisputed that, upon being transferred into the custody of the Marshals, Williams signed a Medical In-Processing form which listed his various ailments, but did not mention back pain.  The evidence presented by Williams shows that once he submitted a proper request on February 6, 2003, he promptly received a medical evaluation.  Based on this evidence, even viewed in the light most favorable to Williams, we cannot conclude that the federal agents

16

acted unreasonably.  Furthermore, Williams has presented no evidence that his condition was worsened due to the failure to receive immediate medical attention. Accordingly, the district court properly granted summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment on Williams' battery claim and the negligent failure to provide medical care claim is hereby **AFFIRMED** and the negligence claim is **DISMISSED** for lack of subject matter jurisdiction.